UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

Nevada Silverpony a/k/a
Jerry D. Ekker,

                    Petitioner,

    vs.                                     REPORT AND RECOMMENDATION

Kevin Goodno, Commission of
Human Services for the State of
Minnesota; and Attorney General
of the State of Minnesota,

                    Respondents.        Civ. No. 07-4558 (JMR/RLE)

    *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

I. Introduction

    This matter came before the undersigned United States Magistrate Judge

pursuant to a general assignment, made in accordance with the provisions of Title 28

U.S.C. §636(b)(1)(B), upon a Petition for a Writ of Habeas Corpus, pursuant to Title

28 U.S.C. §2254.

    The Petitioner Nevada Silverpony a/k/a Jerry D. Ekker ("Silverpony") appears

by Jed J. Hammell, Esq., and the Respondents appear by Barbara Berg Windels,

Assistant State Attorney General.

For reasons which follow, we recommend that the Petition for a Writ of Habeas Corpus be denied.

## II.  Facts and Procedural Background

Silverpony is a civilly committed patient at the Minnesota Security Hospital ("MSH") in St. Peter, Minnesota.   He has an extensive history of chemical dependence, including alcohol, amphetamines, heroine, opium, morphine, marijuana, hallucinogens, cocaine, and barbituates, as well as a long history of psychiatric treatment and hospitalizations.  See, Petitioner's Second Appendix, Docket No. 4, Exhibit 4 at ¶¶8, 11-12.  In addition, he has an extensive criminal history, including two (2) convictions for Attempted Sexual Assault, two (2) convictions for Burglary, two (2) convictions for Unlawful Possession of a Firearm, and one (1) conviction for Escape.  Id., Exhibit 4 at ¶7.

The facts which underlie Silverpony's current Habeas Petition were recently summarized by the Minnesota Court of Appeals, as follows:

> In 1985, appellant Nevada Silverpony, a/k/a Jerry D. Ekker, was convicted of attempted criminal sexual conduct after hitting and attempting to rape a woman.  He was sent to prison for five years.  In 1990, [Silverpony] was convicted of attempted criminal sexual conduct in the first degree after stabbing a woman.  He was incarcerated at Oak Park Heights and began sex offender treatment, but the treatment

was terminated after a month because of [Silverpony's] hostile behavior and unwillingness to accept feedback. In 1993, [Silverpony] was transferred to Stillwater, where he again began sex offender treatment but the treatment was terminated after two months. He was transferred to Lino Lakes, where he began sex offender treatment a third time; it was terminated after six months.

In 1995, [Silverpony] was diagnosed with major depression, chemical dependency, and antisocial personality disorder. He was civilly committed to the Minnesota State Hospital at St. Peter [("MSH")] as mentally ill and dangerous. In 1999, [Silverpony] escaped from [MSH] to California, where he used drugs and alcohol and had unprotected sex with a prostitute, although he knew he carries the hepatitis C virus. He was returned to [MSH], and in 2003 he again escaped, used drugs and alcohol, and had unprotected sex with prostitutes. He was again returned to [MSH].

In June 2003, a doctor removed [Silverpony's] diagnoses of panic disorder with agoraphobia and major depression because [Silverpony] admitted that he lied about his symptoms. He is now diagnosed with polysubstance dependence and antisocial personality disorder. In January 2004, [Silverpony] was assigned the maximum sex offender risk level of three. In March 2004, [Silverpony] attempted to escape and was physically restrained by staff; in May 2004, he ingested drugs in an attempt to appear ill and prompt a move to a less secure facility.

In 2005, [Silverpony] filed a petition for transfer to a non-secure facility, provisional discharge, or full discharge. After a hearing, the special review board denied his petition. He petitioned the judicial appeal panel for

> rehearing and reconsideration of the denial.  After another
> hearing, the judicial appeal panel dismissed his petition.
> He now challenges that dismissal, arguing that the judicial
> appeal panel's findings are not sustained by the evidence
> and that he meets the statutory criteria for discharge.

Silverpony v. Goodno, 2006 WL 3071398 at *1 (Minn. App. 2006), rev. denied (Minn., January 16, 2007).[1]

On appeal, the Minnesota Court of Appeals affirmed the conclusion of the Judicial Appeal Panel ("Appeal Panel"), that Silverpony was "correctly diagnosed with paraphilia and will be dangerous to the public until he completes sex-offender treatment." Id. at *3.

The Court also affirmed the Appeal Panel's conclusion that Silverpony did not meet the statutory criteria for transfer to a less secure facility, for provisional

---

[1]As one of his grounds for relief, Silverpony contests the State Court's factual finding, that he also carries a diagnosis of Paraphilia, Sexual Sadism. Accordingly, Silverpony asserts that we should order his release from civil commitment, based on his contention that he is not mentally ill. See, Petition, Docket No. 1, at p. 3. Silverpony does not contest any other factual finding by the State Courts. As addressed below, in the text of our Opinion, we find that the Record before us contains no testimony, or other evidence, which would rebut, by clear and convincing evidence, the presumption of correctness in the State Court's factual findings, including its finding that Silverpony displays Paraphilia, Sexual Sadism. See, Title 28 U.S.C. §2254(e)(1); Guinn v. Kemna, 489 F.3d 357, 359 (8th Cir. 2007); Lupien v. Clarke,  403 F.3d 615, 618 (8th Cir. 2005); Green v. Norris, 394 F.3d 1027, 1029 (8th Cir. 2005).  Accordingly, for the purposes of this Petition, we accept, as our factual Record, those facts which were set forth by the Minnesota Court of Appeals in Silverpony v. Goodno, 2006 WL 3071398 at *1 (Minn. App. 2006), rev. denied (Minn., January 16, 2007).

discharge, or for full discharge.  Id. at *3-4, citing Minnesota Statutes Sections 253B.18, Subdivisions 6, 7, 15.  Lastly, the Court declined to consider Silverpony's Due Process and Equal Protection claims, after concluding that he had failed to properly raise those claims before the Appeal Panel, explaining as follows:

> The record contains no mention of any constitutional issue. At the conclusion of the judicial appeal panel hearing, [Silverpony's] attorney cited Reome v. Levine, 692 F. Supp. 1046 (D. Minn.1988)(holding that denying discharge to individual who is dangerous to public but not mentally ill violates due process and equal protection).  But citing a case without referring to any particular statutory or constitutional provision does not preserve a constitutional issue for appeal.  See Henning v. Village of Prior Lake, 435 N.W.2d 627, 632 (Minn.App. 1989)(refusing to address constitutional argument not raised below), review denied (Minn. Apr. 24, 1989).

Id. at *1 n. 1.

By way of additional background, in 1995, the State of Minnesota originally sought to have Silverpony civilly committed as a Sexually Dangerous Person ("SDP"), pursuant to Minnesota Statutes Section 253B.02, Subdivision 18(b). See, Petitioner's Second Appendix, supra, Exhibit 4 at p. 1.  However, the State and Silverpony ultimately stipulated to amend the petition for civil commitment, and Silverpony agreed to be civilly committed by the Houston County District Court as Mentally Ill

and Dangerous, pursuant to Minnesota Statutes Section 253B.02, Subdivision 17. Id.,

Exhibit 4 at p. 1.

At the time of Silverpony's initial commitment, the Houston County District

Court considered the reports of the Court-appointed examiners, Paul Reitman, Ph.D.

("Dr. Reitman"), and John V. Austin, Ph.D. ("Dr. Austin"), pursuant to the stipulation

of the parties. Id., Exhibit 4 at ¶¶3, 4. Dr. Reitman diagnosed Silverpony with Major

Depressive Disorder,[2] with tendencies for anti-social behavior, aggression, sadism,

and sexual offending, id., Exhibit 4 at ¶5, while Dr. Austin diagnosed Silverpony with

Schizotypal Personality Disorder,[3] Alcohol Dependance, and Mixed Substance Abuse.

---

[2]The Diagnostic and Statistical Manual of Mental Disorders, Fourth Revision, Text Revision ("DSM-IV-TR"), at p. 369, describes Major Depressive Disorder, as follows:

> The essential feature of Major Depressive Disorder is a clinical course that is characterized by one or more Major Depressive Episodes * * * without a history of Manic, Mixed, or Hypomanic Episodes (Criteria A and C).

A Major Depressive Episode is defined as "a period of at least 2 weeks during which there is either depressed mood or the loss of interest or pleasure in nearly all activities." Id. at p. 349.

[3]DSM-IV-TR, at p. 697, describes Schizotypal Personality Disorder, as follows:

> The essential feature of Schizotypal Personality Disorder is a pervasive pattern of social and interpersonal deficits

Id., Exhibit 4 at ¶6.  Silverpony conceded that he was in need of "treatment for his

sexual, drug, and alcohol addictions," and further conceded that, "without such

treatment there is a substantial likelihood that he will commit future assaults inflicting

serious physical harm on another."  Id. at ¶11.  Accordingly, pursuant to the

stipulation of the parties, the Court concluded that Silverpony met the requirements

for civil commitment as a Mentally Ill and Dangerous person, and further concluded

that the MSH was the least restrictive alternative for his commitment.  Id., Exhibit 4

at ¶¶13-14.

Ten (10) years later, in 2005, Silverpony filed a Petition with the State

Commissioner of Human Services, in which he sought transfer, provisional discharge,

or full discharge, from his civil commitment.  Id., Exhibit 24.  Under the Minnesota

Civil Commitment Act, a civilly committed patient who seeks discharge must first file

a Petition for Discharge with the State Commissioner of Human Services.  See,

Minnesota Statutes Section 253B.18, Subdivision 5(a).  A Hearing on the Petition is

then conducted by a Special Review Board ("SRB"), consisting of three (3) members,

who are experienced in the field of mental illness, and who are appointed by the

---

marked by acute discomfort with, and reduced capacity for,
close relationships as well as by cognitive or perceptual
distortions and eccentricities of behavior.

Commissioner.  Id., Subdivisions 4c, 5.   The SRB is responsible for making a

recommendation to the Commissioner, based upon the statutory requirements for

transfer, provisional discharge, or full discharge.[4] Id. The Commissioner cannot grant

---

[4]A Petition for Transfer to a non-secure facility is not to be granted unless the SRB, and the Commissioner, conclude that such a transfer is appropriate, after considering the following factors:

(i)     the person's clinical progress and present treatment needs;

(ii)    the need for security to accomplish continuing treatment;

(iii)   the need for continued institutionalization;

(iv)    which facility can best meet the person's needs; and

(v)     whether transfer can be accomplished with a reasonable degree of safety for the public.

Minnesota Statutes Section 253B.18, Subdivision 6.

A Petition for Provisional Discharge is not to be granted unless the SRB, and the Commissioner, conclude "that the patient is capable of making an acceptable adjustment to open society," after considering a) "whether the patient's course of hospitalization and present mental status indicate there is no longer a need for treatment and supervision in the patient's current treatment setting," and b) "whether the conditions of the provisional discharge plan will provide a reasonable degree of protection to the public and will enable the patient to adjust successfully to the community."  Id., Subdivision 7.

Lastly, a Petition for Full Discharge is not to be granted unless the SRB, and the

Commissioner, conclude that a) "the patient is capable of making an acceptable

the Petition, whether for transfer, provisional discharge, or full discharge, unless a majority of the SRB recommends that the Petition be granted.  Id., Subdivisions 6, 7, 15.

Once the Commissioner issues a ruling on the Petition, either the patient, or the State, can appeal the decision to the Appeal Panel, which is comprised of three Minnesota District Court Judges, who are appointed by the Minnesota Supreme Court. See, Minnesota Statutes Section 253B.19, Subdivisions 1, 2.  The Appeal Panel conducts a Hearing, and reviews the Commissioner's decision de novo.  Id., Subdivision 2. Ultimately, "[t]he petitioning party bears the burden of going forward with the evidence," but "[t]he party opposing discharge bears the burden of proof by clear and convincing evidence that the [patient] is in need of commitment." Id.; see also, Caprice v. Gomez, 552 N.W.2d 753, 757-58 (Minn. App. 1996).

Here, Silverpony filed a Petition for Transfer, Provisional Discharge, or Full Discharge, and on October 19, 2005, the SRB recommended that his Petition be

---

adjustment to open society," b) the patient "is no longer dangerous to the public," and c) the patient "is no longer in need of inpatient treatment and supervision."  Id., Subdivision 15.  The SRB, and the Commissioner, are directed to consider "whether specific conditions exist to provide a reasonable degree of protection to the public and to assist the patient in adjusting to the community."  Id.  If such conditions do not exist, then the Petition must be denied.  Id.

denied.  See, <u>Petitioner's Second Appendix</u>, supra, Exhibit 24.  The SRB observed

that, in 2004, Silverpony had been assigned to Sex Offender Risk Level 3, indicating

high risk for re-offense, by the State Department of Corrections End of Confinement

Review Committee, and that he was currently assigned to Security Level 1, for the

most restrictive status, at MSH.  <u>Id.</u> at pp. 4-5.  The SRB observed that the MSH

treatment team opposed Silverpony's discharge "because he has never completed

chemical dependency treatment, recently avoiding such treatment by eloping from

MSH, and remains an untreated sex offender."  <u>Id.</u> at p. 6; see also, <u>Affidavit of

Barbara Berg Windels ("Windels Aff.")</u>, <u>Docket No. 9</u>, Exhibit 1, Commissioner's

Exhibit 7.   In addition, the SRB considered a Risk Appraisal from forensic

psychologists John Fabian, Psy.D., J.D. ("Dr. Fabian"), and Kelly Wilson, Psy.D.,

L.P. ("Dr. Wilson"), who concluded that Silverpony continued to present a risk for

sexual or criminal re-offenses.  <u>Id.</u> at p. 7; see also, <u>Windels Aff.</u>, supra, Exhibit 1,

Commissioner's Exhibit 3.

Ultimately, the SRB found that Silverpony had current diagnoses of

Polysubstance Dependency, and Antisocial Personality Disorder.[5]  <u>Id.</u> at p. 8.  Given

---

[5]<u>DSM-IV-TR</u>, at p. 701, describes Antisocial Personality Disorder, as follows:

The essential feature of Antisocial Personality Disorder is

Silverpony's disorders, and his refusal to accept treatment for his conditions, the SRB

concluded that, "[a]lthough he no longer carries an Axis I diagnosis of a major mental

illness, [Silverpony] continues to present a danger to the public if released at this

time." Id. at p. 9.  Accordingly, the SRB recommended that Silverpony's Petition be

denied.  Id.  By Order dated October 26, 2005, the Commissioner adopted that

recommendation.  See, Windels Aff., supra, Exhibit 1, Commissioner's Exhibit 5.

Silverpony's appealed the Commissioner's decision to the Appeal Panel.  See,

Petitioner's Second Appendix, supra, Exhibit 25.  The Appeal Panel considered a

---

a pervasive pattern of disregard for, and violation of, the rights of others that begins in childhood or early adolescence and continues into adulthood. * * *

Individuals with Antisocial Personality Disorder fail to conform to social norms with respect to lawful behavior * * * .  They may repeatedly perform acts that are grounds for arrest (whether they are arrested or not) * * * .  Persons with this disorder disregard the wishes, rights, or feelings of others.  They are frequently deceitful and manipulative in order to gain personal profit or pleasure (e.g., to obtain money, sex, or power) * * * .  They may repeatedly lie, use an alias, con others, or malinger. * * * Individuals with Antisocial Personality Disorder tend to be irritable and aggressive and may repeatedly get into physical fights or commit acts of physical assault (including spouse beating or child beating). * * * They may engage in sexual behavior or substance use that has a high risk for harmful consequences.

psychological evaluation from its independent examiner, Dr. Reitman, as well as

Exhibits from the Commissioner, including the records which were presented to the

SRB, such as the Risk Appraisal by Dr. Fabian and Dr. Wilson, and the MSH

Treatment Team's Nonsupport Note.  See, Petitioner's First Appendix, Docket No.

3, at p. 10; see also, Windels Aff., supra, Exhibit 1, Commissioner's Exhibits 2-3, 7-

10.   The  Appeal  Panel  also  considered  Exhibits  from  Silverpony,  including  Dr.

Reitman's 1995 evaluation of Silverpony, and additional treatment records from

MSH.  Id.; see also, Petitioner's Second Appendix, supra.  Lastly, the Appeal Panel

heard testimony from Silverpony, as well as from Dr. Reitman.  Id.  In his report and

testimony, Dr. Reitman opined that Silverpony did not show any symptoms of a mood

or thought disorder, meaning that he was no longer suffering from Major Depressive

Disorder, which was his Axis I diagnosis at the time of his initial commitment.  See,

Windels Aff., supra, Exhibit 1, Commissioner's Exhibit 2, at unnumbered page 4;

Petitioner's First Appendix, supra at p. 59.  However, Dr. Reitman concluded that

Silverpony did meet the criteria for diagnosis with Paraphilia, Sexual Sadism,[6] as well

---

[6]DSM-IV-TR, at pp. 573-74, describes Paraphilia, Sexual Sadism, as follows:

> The paraphilic focus of Sexual Sadism involves acts (real,
> not  simulated)  in  which  the  individual  derives  sexual
> excitement  from  the  psychological  or  physical  suffering

as Chemical Dependency, and Antisocial Personality Disorder.  Id. at unnumbered pages 4, 6; Petitioner's First Appendix, supra at pp. 68, 74, 78, 87, 93.  Accordingly, Dr. Reitman concluded that Silverpony continued to suffer from a mental illness, and continued to pose a danger to the community.  Id. at unnumbered pages 6-7; Petitioner's First Appendix, supra at 87, 92.

Following the Hearing, the Appeal Panel issued its decision on April 4, 2006, and affirmed the decision of the Commissioner.  See, Petitioner's First Appendix, supra at 10.  In its decision, the Appeal Panel relied upon Dr. Reitman's opinion, and concluded that Silverpony met the criteria for a diagnosis of Paraphilia, which is an Axis I mental illness.  Id. at p. 14.  The Appeal Panel further found that a diagnosis of Paraphilia was supported by other risk assessments, including, specifically, the Risk Appraisal by Dr. Fabian and Dr. Wilson, which included diagnostic testing of

_____

> (including humiliation) of the victim.* * * [Some] with Sexual Sadism act on their sadistic sexual urges with nonconsenting victims. * * * [I]t is the suffering of the victim that is sexually arousing. * * * When Sexual Sadism is practiced with nonconsenting partners, the activity is likely to be repeated until the person with Sexual Sadism is apprehended. * * * When Sexual Sadism is severe, and especially when it is associated with Antisocial Personality Disorder, individuals with Sexual Sadism may seriously injure or kill their victims.

Silverpony.  Id.; see also, Windels Aff., supra, Exhibit 2 (Report of Dr. Reitman), Exhibit 3 (Risk Appraisal, including Silverpony's results on the Hare Psychopathy Checklist-Revised, Violence Risk Appraisal Guide, Sexual Violence Risk Appraisal-20, Static 99, and Minnesota Sex Offender Screening Tool-Revised).

In addition, the Appeal Panel expressly found that Silverpony's statements, to psychologists and psychiatrists, were not reliable, because "[h]e lies about symptoms in order to manipulate evaluators into making a diagnosis that he believes will result in an earlier release."  Id.  Ultimately, the Appeal Panel concluded that, "[u]ntil he successfully completes treatment for this disorder, [Silverpony] remains extremely dangerous to the public."  Id.  After applying the statutory factors, the Appeal Panel concluded that Silverpony had failed to demonstrate that he met the requirements for transfer, provisional discharge, or full discharge.  Id. at pp. 14-15.  Accordingly, it affirmed the Commissioner's decision, and dismissed Silverpony's appeal.  Id.

As previously noted, Silverpony appealed the decision of the Appeal Panel to the Minnesota Court of Appeals, which rejected his arguments, and affirmed the findings of the Appeal Panel in an unpublished Opinion, dated October 31, 2006.  See, Silverpony v. Goodno, supra.  On January 16, 2007, the Minnesota Supreme Court denied Silverpony's petition for review.  Id.

- 14 -

Accordingly, on November 8, 2007, Silverpony filed a Petition for Habeas Corpus under Title 28 U.S.C. §2254, in which he asserts several grounds for relief. See, Petition, Docket No. 1.  First, Silverpony claims that the Minnesota Court of Appeals made an unreasonable determination of fact, when it concluded that he suffers from Paraphilia.  Accordingly, Silverpony contends that he does not meet the definition of "mentally ill," under the Minnesota Civil Commitment Act, and he further contends that he meets the criteria for full discharge, based upon his contention that he is no longer mentally ill.  Id. at pp. 4-5, 10.  In addition, Silverpony contends that the Minnesota Court of Appeals acted contrary to clearly established Federal law, and therefore, it violated his constitutional rights to due process and equal protection of the law, based upon his contention that he is no longer mentally ill, and yet remains subject to civil commitment as a Mentally Ill and Dangerous person.  Id. at pp. 6-8. For his requested relief, Silverpony seeks immediate and full discharge from his civil commitment.[7]  Id. at p. 12.  In the alternative, he asks that we remand this case to the

---

[7]In his Reply Memorandum, Silverpony also asks that we conduct an evidentiary Hearing, although it is not clear what purpose that Hearing would serve, let alone what evidence he would seek to introduce, particularly given his assertion that, based solely upon his pleadings, he is entitled to Habeas relief.  See, Petitioner's Reply Memorandum, Docket No. 12, at 1 ("Since Petitioner has met all the requirements for a writ of habeas corpus, the court should allow an evidentiary hearing to determine the right to habeas corpus relief.").

Minnesota Supreme Court, for consideration of whether the Minnesota Civil Commitment Act violates his rights to due process and equal protection of the law. Id.

For their part, the Respondents ask that we dismiss Silverpony's Habeas Petition because, they contend, that he has failed to exhaust his State Court remedies, with respect to his constitutional claims.   See, Respondents' Memorandum, Docket No. 8, at 17.  In the alternative, the Respondents contend that Silverpony has failed to demonstrate that the Minnesota Court of Appeals acted contrary to clearly established law, or made any unreasonable determinations of fact. Id.  Accordingly, the Respondents assert that Silverpony's claims lack merit, and they ask that we deny his Petition on the merits.  Id.

We address the parties' arguments in turn.

### III.  Discussion

A.    Standard of Review.  "[A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  Title 28 U.S.C. §2254(a).  "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the

Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 68 (1991). As a result, before a Writ may issue, a petitioner must establish that the State's exercise of custody over his person is an affront to the Constitution, a Federal law, or a Federal treaty. Id.; see also, Lupien v. Clarke, 403 F.3d 615, 619 (8th Cir. 2005); Newton v. Kemna, 354 F.3d 776, 782 (8th Cir. 2004), cert. denied, 543 U.S. 979 (2004); Robinson v. Leapley, 26 F.3d 826, 829 (8th Cir. 1994).

In 1996, Congress restricted the scope of a Federal Court's review of Habeas Petitions, where the underlying claims were adjudicated in State Court. See, Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996)("AEDPA"); see also, Lockyer v. Andrade, 538 U.S. 63, 70 (2003) ("AEDPA circumscribes a federal habeas court's review of a state court decision."). A Federal Court's authority to vitiate State Court decisions, by the granting of a Writ of Habeas Corpus, is now limited to the narrow class of claims which have been fully exhausted in the State Courts, and which involve an adjudication that either:

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

- 17 -

> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

Title 28 U.S.C. §2254(d).

The Supreme Court has determined that the "contrary to," and "unreasonable application" clauses of Section 2254(d)(1), present two separate grounds on which a Federal Court may grant Habeas relief to claims adjudicated in the State Courts.  See, Williams v. Taylor, 529 U.S. 362 (2000).  The Court has explained, as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrive[d] at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decide[d] a case differently than [the Supreme Court] has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifie[d] the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applie[d] that principle to the facts of the prisoner's case.

Id. at 412-13.

The Court further explained that a consideration of a State Court's decision, under the "unreasonable application" clause, requires a Federal Court to "ask whether the state court's application of clearly established federal law was objectively unreasonable."

Id. at 409; see also, Underdahl v. Carlson, 462 F.3d 796, 798 (8th Cir. 2006); Davis v.

Norris, 423 F.3d 868, 874-75 (8th Cir. 2005); LaFrank v. Rowley, 340 F.3d 685, 689 (8th Cir. 2003), cert. denied, 541 U.S. 950 (2004).

Under this heightened standard of review, a Federal Court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly," but "[r]ather, that application must also be unreasonable." Id. at 411; see also, Davis v. Norris, supra at 875; Siers v. Weber, 259 F.3d 969, 972-73 (8th Cir. 2001)(examining the impact of Williams on Habeas proceedings), cert. denied, 534 U.S. 1138 (2002); Newman v. Hopkins, 247 F.3d 848, 850-51 (8th Cir. 2001), cert. denied, 536 U.S. 915 (2002); Copeland v. Washington, 232 F.3d 969, 973 (8th Cir. 2000), cert. denied, 532 U.S. 1024 (2001).

As a consequence, Williams affirmed the distinction, which had previously been drawn by several Circuit Courts, that the "contrary to" clause was to be used in cases addressing pure questions of law and mixed questions of law and fact, whereas the "unreasonable application" clause addressed factual determinations. See, e.g., Evans v. Rogerson, 223 F.3d 869, 872 (8th Cir. 2000)(the "in custody" determination for Miranda purposes is a question of law subject to the first prong of Section 2254(d), when the relevant facts are undisputed). Therefore, when a petitioner argues that the

State Court improperly applied clearly established Supreme Court law to a particular set of facts, the Federal Courts may not grant a Writ absent a finding that such an application was unreasonable.  "'[O]bjectively unreasonable' does not mean 'clear error,' because '[t]hese two standards * * * are not the same,'" and "[t]he gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." LaFrank v. Rowley, supra at 689, quoting Lockyer v. Andrade, supra at 75.

Additionally, Section 2254(e)(1) retains a presumption of correctness for all purely factual determinations rendered by a State Tribunal, which can, as a result, only be rebutted by the production of clear and convincing evidence to the contrary.  See, Guinn v. Kemna, 489 F.3d 357, 359 (8th Cir. 2007); Lupien v. Clarke, supra at 618; Green v. Norris, 394 F.3d 1027, 1029 (8th Cir. 2005).  Despite this presumption, Section 2254(d)(2) authorizes the issuance of a Writ if the State Court Judgment "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Kinder v. Bowersox, 272 F.3d 532, 538 (8th Cir. 2001); McDonald v. Bowersox, 101 F.3d 588, 592 (8th Cir. 1996)("[W]e presume state court findings of fact to be correct in habeas proceedings unless the petitioner establishes, the respondent admits, or the record shows

otherwise."), cert. denied, 521 U.S. 1127 (1997).  Thus, "[f]actual findings by the state court 'shall be presumed to be correct,' a presumption that will be rebutted only 'by clear and convincing evidence.'"  Kinder v. Bowersox, supra at 538, citing Title 28 U.S.C. §2254(e)(1).

     B.    Legal Analysis.  We first address the Respondents' contention, that Silverpony has failed to exhaust his State Court remedies, with respect to his two (2) constitutional claims.

     1.    Exhaustion and Procedural Default.

     a.    Standard of Review.  It is well-established that a Federal Court will not entertain a Petition for a Writ of Habeas Corpus on behalf of a person in State custody unless the petitioner has first exhausted all available State Court remedies.  See, Title 28 U.S.C. §2254(b); O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); Rose v. Lundy, 455 U.S. 509 (1982); see also, Armstrong v. State of Iowa, 418 F.3d 924, 925-26 (8th Cir. 2005), cert. denied, 546 U.S. 1179 (2006)("Federal habeas relief is available to a petitioner after he 'has exhausted the remedies available in the courts of the State.'"), quoting Title 18 U.S.C. §2254(b)(1)(A).  The exhaustion of State remedies requirement is based on principles of comity and federalism, as its purpose is to ensure that State Courts are given the first opportunity to correct alleged

- 21 -

Federal constitutional errors raised by State prisoners.  See, <u>O'Sullivan v. Boerckel</u>, supra at 844; <u>Duncan v. Henry</u>, 513 U.S. 364, 365-66 (1995); <u>Rose v. Lundy</u>, supra at 518-19; <u>Curtiss v. Mount Pleasant Correctional Facility</u>, 338 F.3d 851, 55 (8th Cir. 2003), cert. denied, 540 U.S. 1060 (2003)("The exhaustion requirement serves AEDPA's goal of promoting 'comity, finality, and federalism,' by giving state courts 'the first opportunity to review [the] claim,' and to 'correct' any 'constitutional violation in the first instance.'"), quoting <u>Carey v. Saffold</u>, 536 U.S. 214, 220 (2002).

In order to exhaust his State Court remedies, a petitioner must fairly present his constitutional claims to the highest available State Court before seeking relief in Federal Court.  See, <u>O'Sullivan v. Boerckel</u>, supra at 845; <u>Duncan v. Henry</u>, supra at 365-66; see also, <u>Dixon v. Dormire</u>, 263 F.3d 774, 777 (8th Cir. 2001); <u>McCall v. Benson</u>, 114 F.3d 754, 757 (8th Cir. 1997)("[B]efore we may reach the merits of a habeas petition, we must first determine whether the petitioner has fairly presented his federal constitutional claims to the state court.").  The exhaustion of State remedies requires more than the fact that the Federal Habeas applicant has been through the State Courts.  See, <u>Picard v. Connor</u>, 404 U.S. 270, 275 (1971).

To serve the purposes of exhaustion, the State Courts must have the first opportunity to hear the claim, which is sought to be vindicated in a Federal Habeas

proceeding.  Id. at 275-76.  The State Courts have an opportunity to hear a claim, when the claim has been fairly presented, by reference to a specific Federal constitutional right, a Federal case, or a State case, which raises a pertinent Federal constitutional issue.  See, Cox v. Burger, 398 F.3d 1025, 1031 (8th Cir. 2005), cert. denied, 546 U.S. 844 (2005), quoting Barrett v. Acevedo, 169 F.3d 1155, 1161-62 (8th Cir. 1999), cert. denied, 528 U.S. 846 ( 1999); Abdullah v. Groose, 75 F.3d 408, 411 (8th Cir. 1996), cert. denied, 517 U.S. 1215 (1996).  Claims are exhausted only when the same factual underpinnings, and legal theories, were first properly raised in the State Courts.  Id.  "Presenting a claim that is merely similar to the federal habeas claim is not sufficient to satisfy the fairly presented requirement." Id.; see also, Abdullah v. Groose, supra at 412, citing Duncan v. Henry, supra at 366.

Under Minnesota law, "[o]nce a defendant has had a direct appeal, 'all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for post-conviction relief." Zenanko v. State, 587 N.W.2d 642, 644-45 (Minn. 1998), quoting State v. Knaffla, 243 N.W.2d 737, 741 (Minn. 1976). If the petitioner has failed to exhaust his State Court remedies, and if the Court to which he should have presented his claim would now find it procedurally barred, the claim is procedurally defaulted.  See, Sloan v. Delo, 54 F.3d 1371, 1381 (8th Cir.

1995), cert. denied, 516 U.S. 1056 (1996), citing Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991).  In addition, if a petitioner has attempted to raise a claim in State Court, but the State Court determines that the petitioner has defaulted the claim under a State procedural rule, Federal Courts will not, as a general proposition, consider the claim on Habeas review.  See, Coleman v. Thompson, supra at 750; Sloan v. Delo, supra at 1378.

Accordingly, "[a] default under a state procedural rule bars consideration of a federal claim presented to the state courts if the last state court to review the claim specifically rested its decision on an adequate and independent state ground * * *." Sloan v. Delo, supra at 1378, citing Harris v. Reed, 489 U.S. 255, 260-63 (1989).  A claim that is procedurally defaulted under State law, however, is barred from Federal review only if the State procedural rule is firmly established and regularly followed. See, Oxford v. Delo, 59 F.3d 741, 744 (8th Cir. 1995), cert. denied, 517 U.S. 1124 (1996), citing Ford v. Georgia, 498 U.S. 411, 423-24 (1991); see also, Harris v. Reed, supra at 262 ("[A]n adequate and independent finding of procedural default [as a matter of State law] will bar federal habeas review of the federal claim.").

Although the State Court procedural bar is "nearly absolute," a petitioner can avoid the bar if he "demonstrate[s] cause for the default and actual prejudice as a

result of the alleged violation of federal law," or shows his actual innocence.  <u>Reagan</u>

<u>v. Norris</u>, 279 F.3d 651, 656 (8th Cir. 2002), quoting <u>Coleman v. Thompson</u>, supra at

750.  If a petitioner cannot provide cause and prejudice for his default, in the absence

of a claim of actual innocence, a Federal District Court can "properly dismiss[] [the

petitioner's] federal claims **with** prejudice."  <u>Armstrong v. State of Iowa</u>, supra at 927

[emphasis in original].

   b. <u>Legal Analysis</u>.  Here, the Minnesota Court of Appeals

declined to consider Grounds Three and Four of Silverpony's present Petition --

namely, that his continued commitment violates his constitutional rights to due

process and equal protection of the law -- because the Court concluded that those

claims were procedurally barred by Silverpony's failure to raise them before the

Appeal Panel.  Silverpony argues that his attorney did in fact preserve those issues,

by citing an Opinion from another Court in this District, during his closing argument

before the Appeal Panel -- specifically, <u>Reome v. Levine</u>, 692 F. Supp. 1046 (D.

Minn. 1988).[8]  See, <u>Petitioner's Memorandum in Support</u>, <u>Docket No. 3</u>, at 22 n. 6;

---

[8]In <u>Reome v. Levine</u>, the Appeal Panel concluded that the petitioner was not mentally ill, was capable of making an acceptable adjustment to open society, was no longer in need of inpatient treatment and supervision, but was "apt to be involved in criminal behavior in the future," and thus, dangerous to the public. See,  <u>Reome v. Levine</u>, 692 F. Supp. 1046, 1050 (D. Minn. 1988).  Based on this finding of

Petitioner's Reply Memorandum, Docket No. 12, at 3.  He further argues that the

Minnesota Court of Appeals "improperly declined to address [his] constitutional

arguments."  Id. at 4.

In his closing argument, before the Appeal Panel, Silverpony's attorney made

no explicit mention of any constitutional issue, instead citing the Reome case, without

explanation or argument.  See, Petitioner's First Appendix, supra at pp. 109-10.  The

Minnesota Court of Appeals plainly determined that such a bald, and unadorned

citation to Reome, during a summation, was inadequate to preserve any constitutional

issue for appeal as a matter of State law, see, Silverpony v. Goodno, supra at *1 n. 1,

---

"dangerousness," the Appeal Panel concluded that the patient was not entitled to discharge, and the Minnesota Court of Appeals upheld that decision as constitutionally permissible.  The Court, in Reome, disagreed and reasoned that the commitment statute required a finding that a person be mentally ill, and be dangerous **as a result of that mental illness**, while the discharge provision did not require such a causal connection between the mental illness and the dangerousness, as it required a finding both that the patient was no longer mentally ill, and was no longer dangerous to the public.  The District Court concluded that "[s]uch a requirement destroys the constitutional basis for confinement."  Id. at 1051.  Here, although Silverpony contends that he is no longer mentally ill, for reasons explained in the text of our Opinion, we find that Silverpony has not presented any evidence which would rebut, by clear and convincing evidence, the State Court's finding that he suffers from Paraphilia, Sexual Sadism.  Accordingly, notwithstanding Silverpony's assertions, the Court's holding in Reome does not support his request for release.

citing <u>Henning v. Village of Prior Lake</u>, supra at 632, and we are not able to review the State Court's ruling on this procedural bar, by way of a Habeas proceeding.

"A federal court may not re-examine a state court's interpretation and application of state law." <u>Schleeper v. Groose</u>, 36 F.3d 735, 737 (8th Cir. 1994); see also, <u>Murray v. Hvass</u>, 269 F.3d 896, 899 (8th Cir. 2001)("[I]t is not the province of a federal court to decide whether a matter ought to be considered procedurally defaulted under state law."), cert. denied, 535 U.S. 935 (2002). The same rule was followed in <u>Owsley v. Bowersox</u>, 234 F.3d 1055, 1058 (8th Cir. 2000), cert. denied, 534 U.S. 903 (2001). There, a State Appellate Court had ruled that a claim was not properly raised, and preserved, for appellate review. Our Court of Appeals rejected the suggestion that the State Court had erroneously applied the State's own procedural rules, explaining as follows:

> We are obliged to respect the conclusion of the Missouri Supreme Court here. A federal court conducting habeas corpus review must ordinarily refrain from reviewing any issue that a state court has already found to be defaulted on an adequate and independent state-law basis.

<u>Id.</u>

In <u>Clemons v. Luebbers</u>, 381 F.3d 744, 751 (8th Cir. 2004), our Court of Appeals again rejected a Habeas challenge to the validity of a State procedural bar, pointing out that

"federal courts do not look at whether state courts have correctly applied their own procedural rules[;] [t]hey simply determine whether those procedural rules were applied to bar the claim."  See also, <u>May v. Iowa</u>, 251 F.3d 713, 716 (8th Cir. 2001) ("[W]e may not disturb a state court decision interpreting state law on habeas review * * * [citation omitted] and thus we reject [the petitioner's] contention that he did not default his three ineffective assistance of counsel claims").  Therefore, it is clear that this Court cannot review, and overturn, the Minnesota Court of Appeals' determination that Grounds Three and Four of Silverpony's Petition were barred by procedural default.

In addition, Silverpony has failed to show any cause and prejudice to excuse his procedural default -- particularly given his insistence that his constitutional claims were **not** defaulted, notwithstanding the conclusion of the Minnesota Court of Appeals.  A claim that has been procedurally defaulted in the State Courts will not be entertained in a Federal Habeas proceeding, unless the petitioner has shown "cause and prejudice" to excuse his procedural default or, in the alternative, there would be a "fundamental miscarriage of justice" if the Federal Court declined to consider the claim.  See, <u>Coleman v. Thompson</u>, supra at 750.  "It is well-established that federal courts will not address procedurally defaulted claims on the merits unless a petitioner

can show either cause and prejudice to excuse the default or actual innocence." Schliemann v. Fabian, 2007 WL 495007 at *3 (D. Minn., February 13, 2007), citing Clemons v. Luebbers, supra at 750; Reagan v. Norris, supra at 656; Carney v. Fabian, 441 F. Supp. 2d 1014, 1023 (D. Minn. 2006), citing Coleman v. Thompson, supra at 750.

We conclude that Silverpony is unable to satisfy the cause and prejudice standard with respect to his procedurally defaulted claims.[9]  In order to satisfy the "cause" requirement, a petitioner must show that some external impediment prevented him from presenting his claims to the State's highest Court in a timely and procedurally proper manner.  See, Coleman v. Thompson, supra at 753 ("[C]ause under the cause and prejudice test must be something **external** to the petitioner, something that cannot fairly be attributed to him * * *  [f]or example, 'a showing that the factual or legal basis for a claim was not reasonably available * * *  or that some interference by officials made compliance impracticable[.]'")[emphasis in original],

---

[9]Nor do we find any basis to conclude that Silverpony can show "actual innocence," or any other fundamental miscarriage of justice, given our conclusion that the State Court's finding of Paraphilia, Sexual Sadism, is supported by the Record, and has not been rebutted by clear and convincing evidence, as expressed later, in the text of this Opinion.

quoting Murray v. Carrier, 477 U.S. 478, 488 (1986).  Silverpony has advanced no

such impediment for our consideration.

    As a consequence, we conclude that Silverpony has not satisfied the "cause"

prong of the "cause and prejudice" standard, or shown his actual innocence, so as to

excuse his procedural default,[10] and we are obligated to recommend that Grounds

Three and Four of the Petition be dismissed, with prejudice.

    2.    The State Courts' Factual Findings.

            Having disposed of Silverpony's constitutional claims, we turn to

consider his claim that the Appeal Panel, and the Minnesota Court of Appeals, made

an unreasonable determination of facts, when they found that he was properly

diagnosed with Paraphilia, Sexual Sadism.  Instead, Silverpony contends that his

current diagnosis consists solely of Polysubstance Dependence, and Anti-Social

---

[10]Since Silverpony has plainly failed to satisfy the cause requirement as to his
Due Process claim, it is unnecessary to consider the prejudice component.  See,
Ashker v. Class, 152 F.3d 863, 871 (8th Cir. 1998)(when a Habeas petitioner "has not
shown adequate cause to overcome the procedural bar * * * we need not consider the
issue of actual prejudice"); Sweet v. Delo, 125 F.3d 1144, 1151 (8th Cir. 1997), cert.
denied, 523 U.S. 1010 (1998) (same).  Nevertheless, we find no reason to believe that
Silverpony could satisfy the prejudice requirement, as to his procedurally defaulted
claims.

Personality Disorder, and that he is no longer mentally ill, which, he contends, requires his immediate release.  See, Petition, supra at p. 4.

As noted, to obtain Habeas relief for an unreasonable determination of facts, Silverpony must rebut the factual findings of the State Court by producing clear and convincing evidence to the contrary.  See, Title 28 U.S.C. §2254(e)(1); Guinn v. Kemna, supra at 359; Lupien v. Clarke, supra at 618; Green v. Norris, supra at 1029. Here, Silverpony contends that, since 1995, when he was initially committed, he has been subject to regular examination, by several doctors, but that no doctor diagnosed him with Paraphilia until Dr. Reitman made that diagnosis in 2006, during the proceedings before the Appeal Panel.  See, Petitioner's Memorandum in Support, supra at 16.  Moreover, Silverpony argues that, in their Risk Appraisal in June of 2005, Dr. Fabian and Dr. Wilson stated that Paraphilia and Sexual Sadism were not appropriate diagnoses, given their conclusion that "[t]here are no records concerning any sexual deviation diagnosis," and "[t]here has been no documentation of a paraphilia or sexual deviancy disorder."  See, Petitioner's Second Appendix, supra, Exhibit 18, at p. 8.

However, in his testimony, Dr. Reitman explicitly stated that he disagreed with the opinions of Dr. Fabian and Dr. Wilson, in part because he found that the

diagnostic testing, which was administered during the Risk Appraisal, revealed symptoms of Silverpony's sexual deviancy.  See, Petitioner's First Appendix, supra, at pp. 67-69, 71, 85.  Moreover, in its decision, the Appeal Panel relied upon Dr. Reitman's testimony and opinion, to find that Silverpony had been "appropriately diagnosed with Paraphilia, sexual sadism." Id. at p. 14.  The Appeal Panel also concluded that Silverpony's "statements to psychologists and psychiatrists are not reliable," because "[h]e lies about symptoms in order to manipulate evaluators into making a diagnosis that he believes will result in an earlier release." Id.; see also, Petitioner's First Appendix, supra at p. 65 (Testimony of Dr. Reitman); Petitioner's Second Appendix, supra, Exhibit 8 at p. 10 (Report of Dr. Austin, dated November 7, 2003).  The Appeal Panel, and the Minnesota Court of Appeals, had Silverpony's medical records before them, including his diagnoses from other treating physicians, and instead, found Dr. Reitman's opinion persuasive, and supported by independent diagnostic testing.  We find no basis to conclude that this determination was unreasonable.

Silverpony further argues that Dr. Reitman did not identify any facts, which would support a diagnosis of Paraphilia, Sexual Sadism.  See, Petitioner's Memorandum in Support, supra at 17-18.  Specifically, Silverpony argues that Dr.

Reitman mistakenly believed that he had committed rapes, with "gratuitous violence, slapping, hitting and stabbing." Id. at 17, citing Petitioner's First Appendix, supra at pp. 29-32.  In rebuttal, Silverpony contends that he "has never raped anyone but has been convicted of two attempted sexual assaults over a long period of time." Id.

As noted by Silverpony, Dr. Reitman corrected himself in his testimony, and acknowledged that Silverpony had been convicted of **attempted** sexual assaults.  See, Petitioner's First Appendix, supra at p. 77.  However, Dr. Reitman further testified that the difference between a complete rape, and an attempted rape, would not make any difference to his diagnosis.  Id. at p. 73.  In addition, he recounted that Silverpony had slapped one victim, during an attempted sexual assault, and stabbed another victim, during an attempted sexual assault -- facts which Silverpony has not disputed. Id. at p. 50.  Ultimately, Dr. Reitman's testimony reflects his conclusion, that Silverpony's gratuitous violence, during the course of sexual misconduct, supported a finding of gross impairment of his thoughts and perceptions, and sexual deviancy, as reflected by his diagnosis of Paraphilia, Sexual Sadism.  Id. at pp. 48-51.

Accordingly, we find that the Record contains ample evidence to support the findings of the Appeal Panel, and the Minnesota Court of Appeals, that Silverpony has been appropriately diagnosed with Paraphilia, Sexual Sadism, and that such a

diagnosis renders him dangerous to the public, given his failure to complete all recommended treatment. Moreover, this finding by the State Courts is entitled to a presumption of correctness, and Silverpony has failed to sustain his burden to rebut the factual determination with clear and convincing evidence.

Lastly, Silverpony argues that the State Courts made two (2) other unreasonable factual determinations: first, that he meets the statutory definition of "mentally ill," and second, that he does not meet the statutory criteria for full discharge. See, Petition, supra at pp. 5, 10. However, those secondary arguments are based entirely on Silverpony's assertion that his Paraphilia diagnosis is unsupported by the Record.[11] Accordingly, because we find that the State Courts' finding of Paraphilia, Sexual Sadism, was not unreasonable, and was supported by evidence in the Record, Silverpony's other factual arguments necessarily fail.

---

[11]We reach this conclusion, notwithstanding Silverpony's bare assertion that "[e]ven if Dr. Reitman had properly diagnosed Silverpony as having paraphilia, Silverpony would still not meet the strict definition of person who is mentally ill." Petitioner's Memorandum in Support, supra at 21 n. 5. Silverpony has offered no explanation or authority in support of this argument. Moreover, it appears that, during the course of his appeal, Silverpony similarly "raise[d] the issue of whether he is 'mentally ill and dangerous to the public' within the meaning of Minn. Stat. §253B.02, subd. 17 (2004)." Silverpony v. Goodno, supra at *3 n. 3. We agree with the conclusion of the Minnesota Court of Appeals, that Silverpony "was committed under this classification 11 years ago," and "[t]he issue now is whether he meets the criteria for any type of discharge." Id.

Therefore, finding no merit in any of Silverpony's claims, we recommend that the Petition for Habeas relief be denied.

NOW, THEREFORE, It is  –

RECOMMENDED:

1.     That the Petition for a Writ of Habeas Corpus [Docket No. 1] be denied.

2.     That the Respondents' Motion to Dismiss [Docket No. 7] be denied as moot.

Dated:  July 1, 2008                          *s/Raymond L. Erickson*
                                              Raymond L. Erickson
                                              CHIEF U.S. MAGISTRATE JUDGE

NOTICE

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than July 18, 2008,** a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections.  Failure to comply with this

procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than July 18, 2008,** unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.